UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, as subrogee of Arne Oien,<br><br>Plaintiff,<br><br>v.<br><br>ELECTROLUX NORTH AMERICA and ELECTROLUX HOME PRODUCTS, INC., foreign corporations,<br><br>Defendant. | CASE NO. 2:10-CV-01147 RSM<br><br>ORDER ON DEFENDANTS' MOTION IN LIMINE |

This matter comes before the Court on Defendants' Motion in Limine Requesting Exclusion of Plaintiff's Expert's Testimony Under *Daubert*. Dkt. # 26. The Court has reviewed the Motion, Plaintiff's response, Dkt. # 28, and all documents submitted in support thereof. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the Motion.

## I. BACKGROUND

This is a subrogation action concerning a fire that occurred in the south-Seattle home of Arne and Molly Oien, who held a homeowner's insurance policy with Plaintiff State Farm Fire and Casualty Company ("Plaintiff"). Pursuant to the homeowner's policy, Plaintiff paid the

Oiens $276,454.00 to cover property damage and incidental costs relating to the fire. Within days of the fire, Plaintiff retained a local forensic engineering laboratory, MDE, Inc., to determine the origin of the fire. An engineer and fire investigator from MDE examined the clothes dryer in the Oien's home, manufactured by Defendants Electrolux North America and Electrolux Home Products, Inc. (collectively, "Defendants" or "Electrolux"), and determined that it was the origin of the fire. The MDE investigator did not identify the source of ignition or the first ignited material within the dryer, however, and therefore concluded that further investigation was warranted.

Plaintiff subsequently sent the dryer to a second fire examiner, Mr. Jack Sanderson of Fire Findings, Inc., who examined the dryer along with Electrolux representatives. Following the examination, Mr. Sanderson issued an expert report (the "Report") in which he made the following conclusions (summarized here):

- Conclusion 1: The fire originated in the heater pan of the Oien's Electrolux dryer, and was caused by burning particles of lint.

- Conclusions 2 and 5: Electrolux defectively manufactured the dryer, which caused lint to accumulate internally.

- Conclusions 3 and 4: Electrolux defectively designed the dryer because it allows lint to accumulate where it could be ignited.

- Conclusion 6: Electrolux failed to warn because it did not place adequate warnings on the dryer itself, but only placed a warning in the instruction manual.

- Conclusion 7: Electrolux's expectation that customers would hire qualified service personnel to clean the dryer at 18-month intervals, as set forth in the instruction manual, was not reasonable.

Dkt. # 27 (Beard Decl., Ex. 8 (Report, at 45-51)).

In arriving at Conclusion 6, Mr. Sanderson posits that "many people never read instruction manuals" and that "a prudent manufacturer should" therefore "include the warning on

the product next to the dryer vent where anyone attaching the vent can see it." *Id*. at 47. Mr. Sanderson bases this statement upon his nearly 40 years of experience as a fire investigator, and his conversations with various end-users over the years. *See id*., (Report, Ex. 19 (Sanderson Curriculum Vitae, at 388) (Mr. Sanderson has investigated at least 681 suspected dryer fires since 1972)).

In arriving at Conclusion 7, Mr. Sanderson relied in part upon "contacts" between members of his staff and twenty-six Electrolux authorized service providers. *Id*., Ex. 13 (Report, Ex. 5, at 211-213); Ex. 14 (Report, Ex. 5-E, at 270-284 ("Summary of Contacts With Electrolux' Authorized Service Providers")). According to Mr. Sanderson, his staff contacted the authorized service providers in question "posing as a customer wanting to have our dryer cleaned." *Id*., Ex. 13 (Report, Ex. 5, at 211). Mr. Sanderson claims that "few, if any, of them had ever been asked to perform such a service. Some even said they only repaired dryers." *Id*., Ex. 13 (Report, at ¶ 7).

Following Mr. Sanderson's creation of the Report, Plaintiff initiated this subrogation action in the King County Superior Court, which was later removed to this Court. Dkt. # 1. Asserting claims for products liability, breach of implied warranty of merchantability, and negligence, Plaintiff seeks to recover from Defendants the $276,454.00 it paid to the Oiens under their homeowner's policy. *Id*. Plaintiff has indicated that Mr. Sanderson intends to testify at trial regarding each of the conclusions summarized above.

On September 29, 2011, Defendants filed the instant motion in limine, seeking to preclude Mr. Sanderson from testifying regarding Conclusions 6 and 7. Although Defendants concede that Mr. Sanderson is an experienced fire investigator who is qualified to proffer expert testimony regarding the source and origin of the fire (i.e., Conclusions 1-5), they contend that he

is not qualified to opine upon Defendants' alleged failure to warn, or issues relating to consumer expectations. *Id.*

## II. ANALYSIS

A.  Legal Standard

FRE 702 permits witnesses qualified as experts by "knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" about "scientific, technical, or other specialized knowledge" if that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." FRE 702. The expert's testimony must be "based on sufficient facts or data" and "the product of reliable principles and methods." *Id.* Furthermore, the expert must apply these "principles and methods reliably to the facts of the case." *Id.*

Trial courts must act as "gatekeepers" by deciding whether to admit or exclude expert testimony under FRE 702. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993) ("*Daubert I*"). FRE 702 permits a flexible, fact-specific inquiry that embodies the twin concerns of reliability and helpfulness. *See Kumho Tire Co., Ltd. V. Carmichael*, 526 U.S. 137, 150-51 (1999). The test for reliability "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*"). The test for helpfulness is essentially a relevancy inquiry. *See Daubert I*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, nonhelpful." (internal quotation marks omitted)). Accordingly, under FRE 702, trial courts may exclude testimony that falls short of achieving either of the rule's dual concerns. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir.

2010); *see also* Advisory Committee Notes to the 2000 Amendments to Rule 702 ("[R]ejection of expert testimony is the exception rather than the rule. . . .").

B. Discussion

Defendants argue that Mr. Sanderson should be precluded from offering expert testimony regarding Conclusions 6 and 7 because (1) he lacks education, training, and experience in the fields of warnings and consumer expectations; (2) he lacks the qualifications necessary to conduct a proper "survey" of Electrolux qualified service personnel; and (3) his testimony regarding warnings is, in any event, irrelevant since the evidence demonstrates that the Oiens failed to read any warnings regarding their clothes dryers. Each of these arguments is addressed in turn below.

1. Mr. Sanderson's Qualifications

Defendants first argue that Mr. Sanderson is not qualified to provide expert opinions on warnings or consumer expectations because he lacks education, training, and experience in those fields. In support of this position, Defendants point to deposition testimony in which Mr. Sanderson admits that he does not hold himself out as a warnings expert, and that he has never written a product warning. Dkt. # 27 (Beard Decl., Ex. 7 (Sanderson Dep., at 105:3-10, 106:5-24)). While conceding that Mr. Sanderson "is not a 'warnings expert' *as defendants seek to use the term*," Dkt. # 28 p. 9 (emphasis in the original), Plaintiff argues that the relevant inquiry is "whether he is qualified to render an opinion with regard to dryer warnings related to fire danger." *Id*.

Plaintiff points to the absence of any dispute regarding Mr. Sanderson's qualifications to render Conclusions 1-5 – qualifications that demonstrate his expertise with respect to how the product works and the dangers it presents. Given Mr. Sanderson's undisputed expertise in these

areas, Plaintiff claims that he is entitled to opine that "a warning about venting should be located on the machine, near the vent area." Dkt. # 28 p. 10. According to Plaintiff, "[o]ne need not be a 'warnings expert,' or an expert in human factors, or an engineer, to offer such an opinion." *Id*. The Court agrees.

Mr. Sanderson does not seek to offer any opinion as to the wording, color, size or shape of the warning he advocates. Instead, Mr. Sanderson seeks to opine that the dryer is defective due to the lack of *any* warning on the product itself. Based upon his extensive experience as a fire investigator, and his uncontested qualifications with respect to Conclusions 1-5, the Court finds that he is qualified to offer such an opinion here. *See* FRE 702 (an expert may be qualified through "experience" and may offer opinion regarding "specialized knowledge").

2. Testimony Regarding Fire Findings' "Contacts" With Electrolux Service Personnel

Defendants next argue that Mr. Sanderson should be precluded from offering Conclusion 7 because (1) he lacked the qualifications necessary to conduct the "survey" of Electrolux service personnel, and (2) the "survey" was not conducted in a sufficiently reliable manner. Dkt. # 26 p. 12. For the reasons set forth below, the Court concludes that the "survey" is not sufficiently reliable,[1] and that Mr. Sanderson shall not be entitled to testify regarding it at trial. However, as set forth below, Mr. Sanderson shall be entitled to testify regarding the remainder of Conclusion 7.

"[I]t is only 'reasonable' for an expert to rely on the statements of others if the statements or declarations were collected through methods calculated to elicit reliable information." *See Dukes v. Wal-Mart, Inc.*, 222 F.R.D. 189, 197-98 (N.D. Cal. 2004). Here, the

---

[1] As such, the Court does not reach the issue of Mr. Sanderson's qualifications to conduct the "survey."

Court is not convinced that Fire Findings collected the statements at issue through methods calculated to elicit reliable information. Indeed, while the Report indicates that "we" (meaning Fire Findings) contacted the various Electrolux service providers by telephone on specific dates, it makes no mention as to *who* actually made such contact, how long the calls lasted, or what specific questions were asked. Dkt. # 27 (Beard Decl., Ex. 14 (Report, Ex. 5-E, at 270-284 ("Summary of Contacts With Electrolux' Authorized Service Providers")). While the Report indicates the first name of a "contact person" for the majority of Electrolux service providers contacted, the Report does not indicate the last name, title, position, or job responsibilities with respect to any individual "contact person." *Id*. In fact, with respect to five of the service providers contacted (or approximately 20% of the sample group), the Report does not list any "contact person" at all. *Id*. In the absence of any such information, the Court is left to assume that such information was never collected. Moreover, the Court has not been provided with any records of the alleged contacts, aside from Fire Findings' own summaries contained in the Report. *Id*.

In light of these deficiencies, the Court cannot conclude that the statements taken from the various service providers "were collected through methods calculated to elicit reliable information." *Dukes*, 222 F.R.D. at 197-98.[2] Indeed, the Report gives the Court no way of knowing whether the "contact person" who answered the telephone at the various service providers was, in fact, a technician qualified to answer the types of questions posed by Fire Findings (as opposed, for example, to a secretary or office assistant). The Court has no way of knowing whether Fire Findings sought to verify the title and job responsibilities of the various

---

[2] The Court also has reservations that a person "posing as a customer wanting to have [his or her] dryer cleaned'" constitutes the type of scientific methodology required under *Daubert*. *See Daubert II*, 43 F.3d at 1318.

contact people prior to questioning them. And since the Report makes no mention of the questions actually posed to the various contact people, the Court has no way of knowing the context in which the answers were allegedly given. For these reasons, the Court cannot conclude the information gathered through the "survey" is sufficiently reliable. As such, the Court concludes that Mr. Sanderson is not entitled to testify regarding the "survey" of Electrolux service personnel. *Dukes*, 222 F.R.D. at 197-98.

Nevertheless, because Conclusion 7 relies only in part upon the "survey," the Court concludes that Mr. Sanderson is entitled to testify regarding the remainder of Conclusion 7. Indeed, aside from statements regarding the "survey," the remainder of Conclusion 7 contains statements and opinions that Mr. Sanderson is qualified to offer. In particular, the second paragraph of Conclusion 7 states that the "warning to perform the cleaning" is present only in the instruction manual to the dryer, and not on the dryer itself. Dkt. # 27 (Beard Decl., Ex. 8 (Report, at 47)). It goes on to state that, to the extent users actually review the instructions, they "probably only do so when they first purchase their appliances, not 18 months later when Electrolux instructs them to have their appliances serviced." *Id*. In light of Mr. Sanderson's extensive experience investigating dryer fires, which undoubtedly includes contact with end-users, he is qualified by experience to offer an opinion as to whether and when end-users typically read the instructions.

Similarly, the third paragraph of Conclusion 7 relates to the costs of servicing an Electrolux dryer in 18-month intervals over the expected life of the machine. This paragraph does not contain any opinion at all, but merely a summary of Mr. Sanderson's calculation of the applicable service cost. Mr. Sanderson is qualified by experience to offer such testimony.

1                      3.       <u>Relevancy of Expert Testimony Regarding Warnings</u>

2         Finally, Defendants argue that Mr. Sanderson's testimony regarding warnings is not

3 relevant because "neither Mr. nor Mrs. Oien read any of the warnings attached to their dryer or

4 in their product literature." Dkt. # 26 p. 13. According to Defendants, this testimony

5 affirmatively negates the causation element of a claim under the Washington Product Liability

6 Act because it demonstrates that an adequate warning would not, in any event, have altered the

7 Oiens' behavior. *Id*. at 12. Proceeding from this premise, Defendants argue that any expert

8 testimony on the issue of warnings is irrelevant because Plaintiff's failure to warn claim fails as a

9 matter of law.

10         While this argument may very well suffice to defeat Plaintiff's product liability claim at

11 trial, it is not a sufficient basis to preclude the testimony of Mr. Sanderson. Indeed, Plaintiff

12 alleges that there was no warning on the dryer with respect to the peril at issue, so it comes as no

13 surprise that the Oiens testified to not reading one. Additionally, there is no evidence as to how

14 the Oiens would have acted in the event a warning had been on the dryer. As such, the fact that

15 the Oiens' testified to not reading warnings contained on the dryer or in the instruction manual

16 does not, by itself, negate the causation of their product liability claim, nor does it warrant

17 exclusion of Mr. Sanderson's testimony.

18

19

20

21

22

23

24

## III. CONCLUSION

For all of the foregoing reasons, Defendants' Motion in Limine, Dkt. # 26, is GRANTED IN PART and DENIED IN PART.[3] The Motion is GRANTED to the limited extent that Mr. Sanderson shall not be entitled to testify at trial regarding the "survey" of Electrolux personnel, and is DENIED in all other respects.

Dated this 23 day of December 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

[3] Once it is fully briefed, the Court will enter a separate order on Defendants' second motion in limine (Dkt. # 35).